UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PENA REAL ESTATE INVESTMENTS, LLC, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:22-cv-11544-IT |
| | * | |
| ONE HARDT, LLC, and DRIMEL A. REYES, | * | |
| | * | |
| | * | |
| Defendants, | * | |
| | * | |
| and | * | |
| | * | |
| ASHGEMI CORPORATION, | * | |
| | * | |
| Trustee Defendant. | * | |

MEMORANDUM & ORDER

June 14, 2023

TALWANI, D.J.

Plaintiff Pena Real Estate Investments, LLC ("Pena Real Estate") brings claims against Defendants One Hardt, LLC ("One Hardt") and Drimel A. Reyes, related to the failed purchase and sale of two parcels of property in Lawrence, Massachusetts. 3d Am. Verified Compl. [Doc. No. 25].[1] Now pending before the court are One Hardt's and Reyes's Motions to Dismiss [Doc. Nos. 30, 31]. For the reasons below, the motions are granted in part and denied in part.

---

[1] Plaintiff also brings a claim for Trustee Process against Trustee Defendant Ashgemi Corporation. 3d Am. Verified Compl. [Doc. No. 25].

I.    **Factual Background as Set Forth in the <u>Third Amended Verified Complaint</u> [Doc. No. 25], Attached Documents, and Public Records**

Bernardo Pena is the Manager of Plaintiff Pena Real Estate, a limited liability company. 3d Am. Verified Compl. ¶¶ 1, 12 [Doc. No. 25].

Maria Kunhardt is the Manager of Plaintiff One Hardt, a limited liability company. <u>Id.</u> at ¶¶ 2, 7. She is listed in One Hardt's corporate filings with the Commonwealth of Massachusetts as the person authorized to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property. <u>See</u> Ex. 1 in Support of One Hardt's Motion to Dismiss (2021 Annual Report) [Doc. No. 30-3].

Drimel A. Reyes is Kunhardt's son and is either a Member or "de facto member/owner" of One Hardt. 3d Am. Verified Compl. ¶¶ 8, 55 [Doc. No. 25]. Reyes is a business professional with extensive experience in real estate transactions. <u>Id.</u> at ¶ 18.

Over a significant period prior to March 9, 2022, Pena and Reyes discussed and negotiated Pena Real Estate's purchase of two parcels of real property located at 9 and 15 Water Street and 319-323 Broadway in Lawrence, Massachusetts (the "Property") from One Hardt. <u>Id.</u> at ¶¶ 5, 13.

Prior to March 9, 2022, Reyes and Kunhardt travelled to Pena Real Estate's office in Lawrence, Massachusetts, to negotiate a sale of the Property. <u>Id.</u> at ¶¶ 14, 28. While Kunhardt waited in a car outside of Pena Real Estate's office, Pena and Reyes negotiated all material terms of the deal and reached an agreement for the sale of the Property. <u>Id.</u> at ¶¶ 15, 16. Reyes was acting on Kunhardt's behalf in those negotiations. <u>Id.</u> at ¶ 8.

Reyes suggested that they contact attorney Arthur Broadhurst to draft a purchase and sale agreement to document the transaction and to hold a deposit. <u>Id.</u> at ¶ 17. Broadhurst had assisted Reyes in the past in conveying a different property to One Hardt, preparing a deed in connection

with that purchase, and working on other transactions for One Hardt and/or Reyes. Id. at ¶ 23. Although Reyes knew that Broadhurst had also represented Pena in the past, Reyes anticipated that using attorney Broadhurst's services to document the fully negotiated transaction would be the most efficient course of action. Id. at ¶ 19.

On March 9, 2022, Reyes and Pena went to Broadhurst's offices to request that Broadhurst draft a purchase and sale agreement documenting the transaction and hold the deposit securing Pena Real Estate's performance. Id. at ¶ 20. During that meeting, Broadhurst informed Pena and Reyes that he had a conflict of interest based on his past representation of both Buyer and Seller (including Reyes). Id. at ¶ 21. Pena and Reyes stated that they wanted to proceed and to close the transaction. Id. at ¶ 26. Broadhurst informed Pena and Reyes that he would assist in preparing the documents, and that he would draft a conflict waiver for them to sign. Id. at ¶ 27.

That same day, Pena, on behalf of Pena Real Estate, and Reyes, on behalf of One Hardt, and with the knowledge and authority of Kunhardt, executed a Purchase and Sale Agreement (the "Agreement") for the Property. Id. at ¶¶ 9, 28, 33-35; Ex. A [Doc. No. 25-1]. The Agreement listed a purchase price of $1.1 million for the Property, and a closing date of July 15, 2022. 3d Am. Verified Compl. at ¶¶ 36-37 [Doc. No. 25]. The Agreement required Pena Real Estate to pay a deposit of $5,000 as earnest money. Id. at ¶ 29. Reyes, on behalf of One Hardt, directed Pena to pay the deposit to Broadhurst, and Pena Real Estate did so. Id. at ¶ 30. Reyes gave Pena the keys to the Property to allow Pena Real Estate to store its property, consisting of various tools and construction equipment totaling approximately $4,000, in advance of the July 15, 2022 closing date. Id. at ¶¶ 31, 32, 36.

In anticipation and reliance on the Agreement, Pena Real Estate borrowed funds and forewent other real estate transactions. Id. at ¶¶ 39-40.

On the closing date, One Hardt did not perform, allegedly because Kunhardt had COVID. Id. at ¶¶ 42-43. Pena Real Estate attempted to contact One Hardt to schedule a new closing date, but One Hardt continued to not comply with its obligations under the Agreement. Id. at ¶¶ 44-45.

On August 24, 2022, One Hardt sold the Property to Ashgemi Corporation for $1.3 million via deed recorded August 30, 2022. Id. at ¶ 48; Ex. B [Doc. No. 25-2]. Kunhardt signed the deed as manager of One Hardt. Id. Reyes aided and caused the sale of the Property to Ashgemi Corporation. 3d Am. Verified Compl. ¶ 52 [Doc. No. 25]. Reyes, individually or on behalf of One Hardt, removed Pena Real Estate's property formerly being stored at Property. Id. at ¶ 111.

## II.    Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). "Exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6)." Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (internal citations and quotations omitted). In ruling on a motion to dismiss, the court may also consider matters of public record. Lydon v. Loc. 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014).

To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

4

that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, "an adequate complaint must include not only a plausible claim but also a plausible defendant." Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

When a plaintiff brings claims sounding in fraud, there is an exception to Rule 12(b)(6)'s general plausibility pleading standard. See N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15-16 (1st Cir. 2009) (holding that the particularity requirement applies not only to actual fraud claims but also to "associated claims where the core allegations effectively charge fraud"). Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires that a plaintiff's averments of fraud "specifically plead the time, place, and content of an alleged false representation." Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 22 (1st Cir. 2017) (internal quotations and citations omitted).

The First Circuit has interpreted this rule to require that beyond pleading "the false statements and by whom they were made," a plaintiff must also identify "the basis for inferring scienter." N. Am. Cath. Educ. Programming Found., 567 F.3d at 13. In application, this renders a "general averment of the defendant's 'knowledge' of material falsity" insufficient. Id. (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992), superseded by statute on other grounds by, Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737). Instead, plaintiffs must put forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Id.

## III.  Discussion

### A.  *Breach of Contract Against One Hardt (Count I)*

To state a claim for breach of a written contract, a plaintiff must prove that "a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff[]

sustained damages as a result of the breach." Brooks v. AIG SunAmerica Life Assur. Co., 480

F.3d 579, 586 (1st Cir. 2007). Pena Real Estate alleges that One Hardt breached the Agreement

by selling the Property to Ashgemi instead of Pena Real Estate. 3d Am. Verified Compl. ¶¶ 57-

60, 70-73 [Doc. No. 25]. One Hardt claims that the Agreement was not enforceable because

neither Pena nor Reyes signed the Agreement in their corporate capacities, because Reyes did

not have authority as a matter of statute, and because Reyes had neither actual nor apparent

authority to bind One Hardt to the Agreement. One Hardt Mem. 4-5, 8-9 [Doc. No. 30-1].

　　　As to the first argument, Reyes and Pena signed the Agreement on signature lines labeled

as "SELLER" and "BUYER," which the Agreement defines as One Hardt and Pena Real Estate,

respectively. See Agreement, ¶ 1 ("Parties") [Doc. No. 25-1]. Although courts do draw a

distinction in determining liability on a contract signed by a person in a corporate capacity versus

an individual capacity, see McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir. 1994), the failure to

designate the representative capacity of a signatory does not automatically relieve the purported

principal of liability under a contract. Rather, where the principal is disclosed in the Agreement,

and the circumstances surrounding the Agreement clearly indicate One Hardt's involvement, see

Finamore v. Garcia, 2011 WL 13244945, at *12 (D. Mass. Dec. 8, 2011), the lack of

representative designation beyond "Buyer" and "Seller" is not dispositive.

　　　One Hardt relies on Bisceglia v. Bernadine Sisters of Third Ord. of St. Francis of

Massachusetts, Inc., 29 Mass. App. Ct. 959, 959, 560 N.E.2d 567 (1990), to argue that the lack

of reference to the signatory's representative capacity in the signature line renders the Agreement

unenforceable, but that reliance is misplaced. Bisceglia affirmed the trial court's findings that a

purchase and sale agreement was not binding where the signatory signed the agreement without

reference to any representative or official capacity. Id. at 960. But the court found the lack of

corporate designation on the agreement was only part of why the agreement was not binding. Centrally, the court held that although the signatory was a treasurer and a member of the board of directors of the corporation whose principal purpose was not real estate, her position did not authorize her to sell property owned by the corporation without the requisite corporate approval process. Id.

One Hardt's second argument, that Reyes did not have authority as a matter of statute, relies on a provision applicable to corporations, rather than limited liability companies. See Mass. Gen. Laws c. 156B, § 115 (stating that "[a]ny recordable instrument purporting to affect an interest in real estate, executed in the name of a corporation by the president or a vice president and the treasurer or an assistant treasurer…shall be binding on the corporation in favor of a purchaser or other person relying in good faith on such instrument…" notwithstanding inconsistent corporate documents or rules); Dolan v. Airpark, Inc., 24 Mass. App. Ct. 714, 716, 513 N.E.2d 213 (1987) (naming a corporation as a defendant); Bisceglia, 29 Mass. App. Ct. at 961 n.3 (finding Mass. G.L. c. 156B, § 115, applicable to charitable corporations pursuant to Mass. G.L. c. 180, § 10A, as in effect prior to St.1989, c. 644, § 9). The parallel provision for limited liability companies is Mass. Gen. Laws c. 156C, § 66, which provides that

> [a]ny recordable instrument purporting to affect an interest in real property, including without limitation, any deed, lease, notice of lease, mortgage, discharge or release of mortgage, assignment of mortgage, easement and certificate of fact, executed in the name of a limited liability company by any person who is identified on the certificate of organization, as amended, of a domestic limited liability company, or on the application for registration, as amended, of a foreign limited liability company, as a manager or as a person authorized to execute, acknowledge, deliver and record recordable instruments affecting interests in real property, shall be binding on the limited liability company in favor of a seller, purchaser, grantor, grantee, lessor, lessee, mortgagor, mortgagee, and any other person relying in good faith on such instrument, notwithstanding any inconsistent provisions of the operating agreement, side agreements among the members or managers, by-laws or rules, resolutions or votes of the limited liability company.

As another district court has noted, "[a]lthough this [provision] conclusively establishes the authority of any person named on the Certificate to execute real-property instruments, it does not establish that a person not named on that Certificate lacks authority." Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C., 717 F. Supp. 2d 724, 738 n.13 (E.D. Mich. 2010), aff'd sub nom. Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC, 399 F. App'x 97 (6th Cir. 2010).

One Hardt's third argument is that Reyes had neither actual nor apparent authority to bind One Hardt to the Agreement. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Crawford-Brunt v. Kruskall, 2018 WL 379022, at *4 (D. Mass. Jan. 11, 2018) (quoting Restatement (Third) of Agency § 2.01 (2006)). Whether Pena Real Estate will ultimately be able to prove that Reyes had actual authority to execute the purchase and sale agreement is not now before the court. At this juncture, Pena Real Estate's allegations that Kunhardt and Reyes traveled to Pena Real Estate's offices to negotiate the sale of the Property, that Reyes negotiated the purchase and sale agreement on Kunhardt's behalf while she waited outside in a car, and that Reyes executed the purchase and sale agreement on Kunhardt's behalf are sufficient. 3d Am. Verified Compl. ¶¶ 8-10, 14-16 [Doc. No. 25].

Alternatively, Pena Real Estate alleges that Reyes had apparent authority to bind One Hardt to the Agreement. "Apparent authority is that authority resulting 'from conduct by the principal which causes a third person reasonably to believe that a particular person. . .has authority to enter into negotiations or to make representations as his agent.'" Binkley Co. v. E. Tank, Inc., 831 F.2d 333, 337 (1st Cir. 1987) (quoting Hudson v. Mass. Prop. Ins. Underwriting

Ass'n, 386 Mass. 450, 457, 436 N.E.2d 155 (1982)). As a general matter, apparent authority is established by conduct or representations between the principal and the third party. Restatement (Third) of Agency § 3.03, cmt. b (2006) ("Apparent authority is present only when a third party's belief is traceable to manifestations of the principal."). "The court can decide that an agent had apparent authority to conduct a transaction on the basis of statements, conduct, course of dealing and other manifestations of the principal's consent that would lead a third party of reasonable prudence in the business to rely on the agent's authority." Binkley Co., 831 F.2d at 337.

Here, Pena Real Estate has sufficiently stated a claim that Reyes had apparent authority to bind One Hardt. "Under Massachusetts law, apparent authority is a question of fact to be inferred from the factual underpinnings of the case." Id. Pena Real Estate alleges that Reyes was Kunhardt's son, and that prior to prior to executing the Agreement, Reyes and Kunhardt travelled to the offices of Pena Real Estate to negotiate the deal, while Kunhardt remained in the car. Once the closing date passed, Pena Real Estate was notified that One Hardt's failure to complete the transaction was due to Kunhardt's illness, which plausibly alleges that One Hardt, through Kunhardt, was on notice of the Agreement but did not take steps to correct Pena Real Estate as to Reyes's authority. See Boice–Perrine Co. v. Kelley, 243 Mass. 327, 330–331, 137 N.E. 731 (1923) ("It is the instant duty of a principal, upon ascertaining the facts, at once to disaffirm an act done in his name by an agent in execution of a power conferred, but in a mode not sanctioned by the terms of the agency, or in excess or misuse of the authority given."). At the pleading stage, these allegations support an inference that Reyes had apparent authority to negotiate and bind One Hardt.

Where Pena Real Estate has pleaded that that there was an enforceable contract for the sale of the Property, that One Hardt did not perform under the Agreement, and that Pena Real

Estate suffered harm as a result, including by foregoing business opportunities and borrowing funds, Pena Real Estate has sufficiently stated a claim for breach of contract.

Accordingly, One Hardt's <u>Motion to Dismiss</u> [Doc. No. 30] is DENIED as to Count I.

B. *Breach of the Implied Covenant of Good Faith and Fair Dealing against One Hardt and Reyes (Counts IV, IX)*

Pena Real Estate also alleges that both One Hardt and Reyes breached the covenant of good faith and fair dealing. 3d Am. Verified Compl. ¶¶ 101-104 [Doc. No. 25]. Under Massachusetts law, "[t]he covenant of good faith and fair dealing is implied in every contract," <u>Uno Rests., Inc. v. Boston Kenmore Realty Corp.</u>, 441 Mass. 376, 385, 805 N.E.2d 957 (2004), and provides that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," <u>Anthony's Pier Four, Inc. v. HBC Associates</u>, 411 Mass. 451, 471, 583 N.E.2d 806 (1991) (quoting <u>Uproar Co. v. Nat'l Broad. Co.</u>, 81 F.2d 373, 377 (1st Cir. 1936)). "The covenant is preserved so long as neither party injures the rights of another to reap the benefits prescribed by the terms of the contract." <u>Uno Rests., Inc.</u>, 441 Mass. at 385. "There is no requirement that bad faith be shown; instead, the plaintiff has the burden of proving a lack of good faith[,]" and "the lack of good faith can be inferred from the totality of the circumstances." <u>T.W. Nickerson, Inc. v. Fleet Nat. Bank</u>, 456 Mass. 562, 570, 924 N.E.2d 696 (2010).

One Hardt argues that even if the breach of contract count survives, Pena Real Estate has not sufficiently alleged a breach of the implied covenant of good faith and fair dealing where there is no showing that One Hardt acted in bad faith. But if a jury finds a valid agreement for the sale of the Property, it could infer that the actions to sell the Property to a different buyer injured Pena Real Estate's rights to receive the fruits of the contract.

However, where Pena Real Estate has not alleged that it had a contract with Reyes individually, there can be no claim for a breach of the implied covenant. See Dimaio Family Pizza & Luncheonette, Inc. v. Charter Oak Fire Ins. Co., 349 F.Supp.2d 128, 134 n. 6 (D. Mass. 2004) ("Without a breach of the contract, there can be no claim for a breach of an implied covenant of good faith and fair dealing.") (quoting Chokel v. Genzyme Corp., 2003 WL 23016549, at *4 (Mass. Super. Nov. 12, 2003).

Accordingly, One Hardt's Motion to Dismiss [Doc. No. 30] is DENIED as to Count IV. Reyes's Motion to Dismiss [Doc. No. 31] is GRANTED as to Count IX.

C. *Unjust Enrichment Against One Hardt (Count II)*

Pena Real Estate alleges that One Hardt was unjustly enriched by at least $200,000, equivalent to difference in the sale price between Ashgemi and the Agreement. 3d Am. Verified Compl. ¶¶ 61-65 [Doc. No. 25]. One Hardt argues that to the extent the breach of contract claim survives, the alternate claim for unjust enrichment cannot proceed, and that even so, Pena Real Estate cannot sustain a claim for unjust enrichment where Pena Real Estate did not confer a benefit on One Hardt. One Hardt Mem. 13 [Doc. No. 30-1].

Under Massachusetts law, to state a claim for unjust enrichment a plaintiff must prove "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances [which] would be inequitable without payment for its value." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009), decision clarified on denial of reh'g, 559 F.3d 1 (1st Cir. 2009) (citing 26 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts, § 68:5 (4th ed. 1993)).

As an initial matter, "plaintiffs may plead breach of contract and unjust enrichment as alternative theories, even though they are mutually exclusive... where the enforceability of the contract is in dispute." SiOnyx, LLC v. Hamamatsu Photonics K.K., 332 F. Supp. 3d 446, 473 (D. Mass. 2018). Here, where the enforceability of the Agreement is in dispute, Pena Real Estate is permitted to proceed under alternate theories.

However, Pena Real Estate has not sufficiently pleaded a claim for unjust enrichment where it does not allege that One Hardt retained any benefit conferred upon it by Pena Real Estate. Although Pena Real Estate paid a deposit to One Hardt, there is no allegation that One Hardt did not return the deposit or that the deposit conferred any benefit on One Hardt while it was in One Hardt's possession. Further, to the extent that Pena Real Estate seeks the difference in the sale price under the Agreement and the fair market value price of the Property, Pena Real Estate has not alleged that this gain was somehow conferred on One Hardt by Pena Real Estate.

Accordingly, One Hardt's Motion to Dismiss [Doc. No. 30] is GRANTED as to Count II.

D.  *Breach of Warranty of Authority/Deceit Against Reyes (Count V)*

Pena Real Estate alleges that if Reyes did not have authority to bind One Hardt to the Agreement, Reyes breached his express or implied warranty to Pena regarding his authority in an attempt to deceive Pena Real Estate. 3d Am. Verified Compl. ¶¶ 74-82 [Doc. No. 25].

"In a deceit action, the plaintiff must prove 'that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.'" Danca v. Taunton Sav. Bank, 385 Mass. 1, 8, 429 N.E.2d 1129 (1982) (quoting Barrett Assocs. v. Aronson, 346 Mass. 150, 152, 190 N.E.2d 867 (1963)). Although claims sounding in fraud are subject to a heightened pleading standard, see N. Am. Cath. Educ.

12

Programming Found., 567 F.3d at 15-16, a plaintiff can satisfy the intent element by either

showing that the misstatements were made with the specific purpose of inducing reliance, or that

there was reason to know that the defendant had reason to expect that plaintiffs would rely upon

the misstatements, see Restatement (Second) of Torts § 531, cmt. b-d (1977).

Reyes argues first that he cannot be held liable for fraud where Pena Real Estate has not

alleged that he claimed that he had authority to sign the Agreement. Reyes Mem. 6-8 [Doc. No.

32]. But Pena Real Estate has alleged that Reyes negotiated the Agreement, suggested that the

parties employ a lawyer to draft the Agreement, and signed the Agreement. 3d Am. Verified

Compl. ¶¶ 15-16, 20, 34 [Doc. No. 25]. Pena Real Estate has also plausibly pleaded that Reyes

made these misstatements to induce Pena Real Estate to enter into the transaction, and that Reyes

had reason to know that Pena Real Estate was proceeding based on Reyes's conduct implying

that he had authority to bind One Hardt. Id. at ¶ 80.

Reyes also argues that it was Attorney Broadhurst who prepared the Agreement, and that

Reyes "merely signed the . . . Agreement presented to him by Broadhurst." Reyes Mem. 8 [Doc.

No. 32]. But the contention that Broadhurst was directing Reyes rather than the reverse does not

square with the allegations in the Third Amended Verified Complaint [Doc. No. 25].

Finally, Reyes argues that any claim against Reyes is foreclosed by the Agreement itself.

Paragraph 21 of the Agreement, entitled Liability of Trustee, Shareholder, Beneficiary, Etc.,

states:

> If the SELLER or BUYER executes this agreement in a representative capacity,
> only the principal or the estate represented shall be bound, and neither the
> SELLER nor BUYER so executing, nor any shareholder or beneficiary of any
> trust, shall be personally liable for any obligation, express or implied, hereunder.

3d Am. Verified Compl. Ex A [Doc. No. 25-1]. If the Agreement is enforceable, this provision

may well bar claims for breach of contract or breach of the implied covenant of good faith and

fair dealing against Reyes. But Pena Real Estate has not brought a breach of contract claim against Reyes and the court is dismissing its claim for breach of the implied covenant of fair dealing where there is no alleged agreement between Reyes and Pena Real Estate. Nothing in this language bars the fraud claim at issue here.

Accordingly, Reyes's <u>Motion to Dismiss</u> [Doc. No. 31] is DENIED as to Count V.

E.   *Intentional Interference with Contractual Relations against Reyes (Count X)*

Pena Real Estate alleges that Reyes intentionally interfered with the Agreement between Pena Real Estate and One Hardt by inducing One Hardt to breach the contract through the sale to Ashgemi. 3d Am. Verified Compl. ¶¶ 51-52, 105-109 [Doc. No. 25].

To prevail on a claim for tortious interference with a contractual relationship under Massachusetts law, a plaintiff must show that "(1) [the plaintiff] had a contract with a third party; (2) the defendant knowingly interfered with that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." <u>Hamann v. Carpenter</u>, 937 F.3d 86, 90 (1st Cir. 2019) (quoting <u>O'Donnell v. Boggs</u>, 611 F.3d 50, 54 (1st Cir. 2010)).

Reyes argues first that because there was no enforceable contract (for the reasons set forth by One Hardt), there can be no intentional interference. Reyes Mem. 15 [Doc. No. 32]. Where the court has held that Pena Real Estate has sufficiently stated a claim for breach of contract with One Hardt, this argument is unavailing at the pleading stage.

Alternatively, Reyes argues that Pena Real Estate has not adequately pleaded the specific contractual provisions that Reyes allegedly breached. <u>Id.</u> at 16. But Pena Real Estate is not contending that Reyes breached the Agreement, but that Reyes interfered with One Hardt's performance of the Agreement, by "aid[ing,] abet[ting,] and otherwise caus[ing], without proper

14

motive or purpose the sale of the Property from One Hardt to Ashgemi….” 3d Am. Verified Compl. ¶ 52 [Doc. No. 25].

Accordingly, Reyes's <u>Motion to Dismiss</u> [Doc. No. 31] is DENIED as to Count X.

F.  *Conversion Against One Hardt and Reyes (Count XI)*

Pena Real Estate alleges that Reyes, individually or on behalf of One Hardt, removed tools and supplies that Pena Real Estate had stored at the Property, and did so with the intent to permanently deprive Pena Real Estate of these tools and supplies. <u>Id.</u> at ¶¶ 110-114.

“The tort of conversion requires an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession.” <u>Kelley v. LaForce</u>, 288 F.3d 1, 11 (1st Cir. 2002) (citing <u>Third Nat'l Bank v. Cont'l Ins. Co.</u>, 388 Mass. 240, 446 N.E.2d 380 (1983)). Under Massachusetts law, a plaintiff asserting a conversion claim must show that

> (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

<u>Evergreen Marine Corp. v. Six Consignments of Frozen Scallops</u>, 4 F.3d 90, 95 (1st Cir. 1993). Both Reyes and One Hardt argue that they never exercised control over Pena Real Estate's property, that Pena Real Estate could have retrieved the property stored at the Property as it had the keys, and that Pena's failure to retrieve them “falls on Pena.” One Hardt Mem. 20 [Doc. No. 30-1]; <u>see also</u> Reyes Mem. 16-17 [Doc. No. 32]. That argument, however, ignores Pena Real Estate's allegation that “Reyes, individually or on behalf of One Hardt[,] removed the [listed] property of Pena Real Estate . . . from the Property.” 3d Am. Verified Compl. ¶ 111 [Doc. No. 25]. While that allegation is conclusory as to One Hardt's role, it is sufficient as to Reyes.

Accordingly, as to Count XI, One Hardt's <u>Motion to Dismiss</u> [Doc. No. 30] is GRANTED and Reyes's <u>Motion to Dismiss</u> [Doc. No. 31] is DENIED.

G.   *Civil Conspiracy Against One Hardt and Reyes (Count VIII)*

Pena Real Estate alleges that Reyes and Kunhardt, as the named Manager of One Hardt, entered into a scheme to bind Pena Real Estate to the Agreement while simultaneously negotiating a more profitable transaction with Ashgemi. 3d Am. Verified Compl. ¶¶ 95-100 [Doc. No. 25]. Defendants argue that a claim sounding in contract cannot support a civil conspiracy claim, and that Pena Real Estate has not sufficiently pleaded its tort claims. One Hardt Mem. 18-19 [Doc. No. 30-1]; Reyes Mem. 13-14 [Doc. No. 32].

Massachusetts recognizes two types of civil conspiracy—one based on coercion, and one based on tort. <u>See</u> <u>Taylor v. Am. Chemistry Council</u>, 576 F.3d 16, 34 (1st Cir. 2009). Here, Pena Real Estate's claim is based on tort. "In Massachusetts, a civil conspiracy requires (1) 'a common design or an agreement. . .between two or more persons to do a wrongful act' and (2) 'proof of some tortious act in furtherance of the agreement.'" <u>Bassett v. Jensen</u>, 459 F. Supp. 3d 293, 312 (D. Mass. 2020) (citing <u>Aetna Cas. Sur. Co. v. P & B Autobody</u>, 43 F.3d 1546, 1564 (1st Cir. 1994)). "To establish civil conspiracy, a plaintiff must provide evidence that the defendants agreed together to commit an underlying tort." <u>Id.</u> (internal quotations omitted).

As an initial matter, if Reyes is found to be an officer of One Hardt, a claim for civil conspiracy cannot survive because "an entity cannot conspire with itself." <u>Platten v. HG Bermuda Exempted Ltd.</u>, 437 F.3d 118, 131 (1st Cir. 2006).

However, to the extent that Reyes and One Hardt were separate entities, Pena Real Estate has plausibly alleged a claim against both Reyes and One Hardt. Although a pure breach of contract cannot support a claim for civil conspiracy, <u>see</u> <u>McLaughlin v. J-PAC, LLC</u>, 2011 WL

1758945, at *2 (Mass. Super. Apr. 14, 2011); see Blake v. Pro. Coin Grading Serv., 898 F. Supp. 2d 365, 392 (D. Mass. 2012) (citing McLaughlin), Pena Real Estate alleges tortious conduct beyond breach of contract. Specifically, Pena Real Estate alleges that Kunhardt and Reyes entered into a scheme whereby One Hardt would put Reyes forward as someone who could bind One Hardt to the Agreement, only to string Pena Real Estate along and decide whether it would actually perform on the Agreement later, using the defenses to enforceability Defendants now assert. 3d Am. Verified Compl. ¶¶ 96-99 [Doc. No. 25].

Further, Pena Real Estate alleges that both One Hardt, through Kunhardt, and Reyes engaged in tortious actions in furtherance of the alleged scheme. For example, Kunhardt allegedly accompanied Reyes to Pena Real Estate's offices to allow Reyes to negotiate the deal, id. at ¶ 14, and later signed the deed transferring the Property to Ashgemi, Ex. B [Doc. No. 25-2]. As to Reyes, Pena Real Estate alleges that Reyes held himself out as an authorized agent with ability to negotiate and bind One Hardt to the Agreement, signed the Agreement, and assisted in the sale of the Property to Ashgemi. 3d Am. Verified Compl. ¶¶ 15-16, 20, 34, 52 [Doc. No. 25].

Accordingly, One Hardt's Motion to Dismiss [Doc. No. 30] and Reyes's Motion to Dismiss [Doc. No. 31] are DENIED as to Count VIII.

### H.  *Mass. Gen. Laws c. 93A Against One Hardt and Reyes (Counts III and VII)*

Pena Real Estate alleges that both One Hardt and Reyes engaged in willful, knowing, and intentional deceptive acts in violation of Mass. Gen. Laws. c. 93A, §§ 2, 11. 3d Am. Verified Compl. ¶¶ 66-69, 91-94 [Doc. No. 25]. Defendants argue that Pena Real Estate has not alleged any unfair or deceptive conduct beyond conclusory statements, but rather that "the issue is whether One Hardt was even bound to the contract in the first place." One Hardt Mem. 14 [Doc. No. 30-1]; see Reyes Mem. 11 [Doc. No. 32]. Further, Reyes argues that although Pena Real

Estate alleges that Reyes caused One Hardt to breach to obtain benefits, Pena Real Estate has not alleged that Reyes actually benefitted from One Hardt's alleged breach of the Agreement. Reyes Mem. 11 [Doc. No. 32]. Pena Real Estate claims that One Hardt and Reyes used the Agreement as a "placeholder" to secure a more profitable sale to Ashgemi and kept the Agreement on the backburner in case the Ashgemi sale fell through. Opp. to One Hardt Mot. to Dismiss 16 [Doc. No. 35-1]; Opp. to Reyes Mot. to Dismiss 10-11 [Doc. No. 36-1].

"To state a claim under the consumer protection statute, a plaintiff must allege facts sufficient to establish four elements: first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;' third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury." Rafferty v. Merck & Co., Inc., 479 Mass. 141, 161, 92 N.E.3d 1205 (2018) (internal citations omitted). For a business plaintiff to state a claim under chapter 93A, § 11, it generally must plead the additional fifth element that there was a "commercial transaction" between itself and a defendant. Id. at 162 n.7. The conduct of a defendant in a section 11 business case is judged by a higher standard than the conduct of a defendant in a section 9 consumer case. Malden Transp., Inc. v. Uber Techs., Inc., 404 F.Supp.3d 404, 419 (D. Mass. 2019).

"A mere breach of contract does not constitute an unfair or deceptive trade practice under 93A, unless it rises to the level of 'commercial extortion' or a similar degree of culpable conduct." Com. Union Ins. Co. v. Seven Provinces Ins. Co., Ltd., 217 F.3d 33, 40 (1st Cir. 2000) (internal citations omitted); Stagikas v. Saxon Mortg. Servs., Inc., 795 F.Supp.2d 129, 137 (D. Mass. 2011) ("[A] party who breaches a contract in a deliberate attempt to obtain the benefits of the contract, and to avoid fulfilling its own obligations under it, may have committed an unfair or

deceptive act under chapter 93A."). "[A] recognized form of commercial extortion is the 'stringing along' of a business counterparty. Stringing along tactics involve the use of a protracted pattern of conduct ... calculated to misrepresent the true situation to the target business and thereby induce detrimental reliance on the target's part." H1 Lincoln, Inc. v. S. Washington St., LLC, 489 Mass. 1, 16, 179 N.E.3d 545, 558 (2022) (internal quotations and citations omitted).

Here, Pena Real Estate has sufficiently alleged that One Hardt engaged in acts to string Pena Real Estate along by representing that Reyes had authority to enter into the Agreement, and that One Hardt would perform under the agreement while contemplating non-performance should One Hardt get a better offer. See Sec. III.F, supra. Although fact discovery may indicate that One Hardt engaged in no wrongdoing or that its actions do not rise above a mere breach of contract, Pena Real Estate has sufficiently alleged a claim under c.93A against One Hardt at the pleading stage. See Stagikas, 795 F.Supp.2d at 137 (denying a motion to dismiss where the plaintiff pleaded that the plaintiff was led to believe he would be entitled to a benefit if he complied with contract obligations, and induced into making payments on that contract, even though "[w]hether, of course, the actual evidence will show merely a breach of contract is a question for another day.").

Further, Pena Real Estate has sufficiently pleaded a claim under c.93A against Reyes where Pena Real Estate alleges that Reyes falsely held himself out to be an agent authorized to negotiate and convey the Property knowing that he did not have the authority to do so.

Accordingly, One Hardt's Motion to Dismiss [Doc. No. 30] is DENIED as to Count III, and Reyes's Motion to Dismiss [Doc. No. 31] is DENIED as to Count VII.

I.  *Declaratory Judgment as to One Hardt and Reyes (Count VI)*

Pena Real Estate seeks a declaratory judgment as to both Defendants that Reyes, and not

his mother Maria Kunhardt, conducts the business of One Hardt, and has a legal and/or equitable

interest in the Property. 3d Am. Verified Compl. ¶¶ 83-90 [Doc. No. 25]. Pena Real Estate also

seeks a judgment that Kunhardt controls legal title to the Property through One Hardt on behalf

of Reyes through a trust, so that One Hardt can perpetuate the alleged scheme to "lock in"

business transactions and then disclaim them. Id. Defendants argue that there is no present

controversy as to the ownership of either One Hardt or the Property, that Pena Real Estate only

states legal conclusions without factual support, and that declaratory relief is futile because

Kunhardt is the sole person authorized to execute documents affecting interests in real property.

One Hardt Mem. 17-18 [Doc. No 30-1]; Reyes Mem. 10 [Doc. No. 32].

The Declaratory Judgment Act, 28 U.S.C. § 2201, allows a district court to grant

declaratory relief, limited to cases of actual controversy under Article III. 28 U.S.C. § 2201(a)

(district courts "may declare the rights and other legal relations of any interested party seeking

such declaration, whether or not further relief is or could be sought."); Aetna Life Ins. Co. v.

Haworth, 300 U.S. 227, 240-41 (1937). "The party seeking declaratory judgment has the burden

of establishing the court's jurisdiction." Scottsdale Ins. Co. v. MRH Indian Enters. LLC, 2020

WL 3545512, at *3 (D. Mass. June 30, 2020). "To determine if the declaratory relief is sought

within a case of actual controversy, district courts must examine 'whether the facts alleged,

under all the circumstances, show that there is a substantial controversy, between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment.'" In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d 638, 645

(1st Cir. 2019) (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941))

(internal emphasis removed); see also Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937) (holding that a federal court should generally entertain a declaratory judgment action "(1) when the judgement will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.").

Here, the issue of ownership and control of One Hardt and the Property is not a substantial controversy where the central question presented is Reyes's authority to bind One Hardt to the Agreement. A declaration regarding the corporate structure of One Hardt is not "of practical assistance in setting the underlying controversy to rest" where the enforceability of the Agreement turns of questions of agency and can be determined without a determination of ownership interests. State of Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994).

Accordingly, One Hardt's Motion to Dismiss [Doc. No. 30] and Reyes's Motion to Dismiss [Doc. No. 31] are GRANTED as to Count VI.

## IV. Conclusion

For the foregoing reasons, One Hardt's Motion to Dismiss [Doc. No. 30] and Reyes's Motion to Dismiss [Doc. No. 31] are GRANTED in part and DENIED in part. One Hardt's Motion to Dismiss [Doc. No. 30] is DENIED as to the Breach of Contract claim (Count I), the c.93A claim (Count III), the Breach of the Implied Covenant of Good Faith and Fair Dealing claim (Count IV), and the Civil Conspiracy claim (Count VIII) against One Hardt. Reyes's Motion to Dismiss [Doc. No. 31] is DENIED as to the Breach of Warranty of Authority/Deceit claim (Count V), the Civil Conspiracy claim (Count VIII), the Chapter 93A claim (Count VII),

the Intentional Interference with Contractual Relations claim (Count X), and the Conversion

claim (Count XI), against Reyes. The motions are GRANTED as to all remaining claims.

IT IS SO ORDERED

June 14, 2023                                    /s/ Indira Talwani
                                                United States District Judge